# GILBRIDE, TUSA, LAST & SPELLANE LLC

**ATTORNEYS AT LAW**
**1011 High Ridge Rd, Suite 305**
**STAMFORD, CONNECTICUT 06905**
**(203) 542-8418**
**FACSIMILE (203) 622-9392**
**WWW.GTLSLAW.COM**

September 2, 2022

**Via ECF**
The Honorable Judge Steven I. Locke
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

**RE:** **Medical Depot, Inc. d/b/a Drive Devilbiss Healthcare v. Med Way U.S., Inc (2:22-cv-01272-DRH-SIL**

Dear Honorable Judge Locke:

    Med Way U.S., Inc. ("Med Way"), by and through undersigned counsel, submits this letter, pursuant to Local Civil Rule 37.3 of the Local Rules of the E.D.N.Y. and Section 4(A)(i) of Your Honor's Individual Motion Practices, in Opposition to Medical Depot, Inc. d/b/a Drive Devilbiss Healthcare's ("Drive") August 26, 2022, Motion to Compel (DKT. 24) ("Drive's Motion").

    Through its papers, Drive cries foul[1] in an obvious attempt to sanitize its continued illicit and illegal efforts to harass, unnecessarily delay, and needlessly increase the costs of what is nothing short of a series of obvious maneuvers designed to drive Med Way out of the medical air mattress marketplace and possibly out of business entirely, as well as to distance itself from its improper initiation of the present case, the underlying action before the TTAB seeking to cancel Med Way's registered MEDAIR® trademark, and most notably Drive's ongoing trademark counterfeiting and infringing activities. As demonstrated below and in the exhibits submitted in support hereof, and despite Drive's well-crafted papers, the undisputable fact is that at every juncture Drive has unabashedly side-stepped and shifted fault (be it claims of infringement[2] or

---

[1] During the Meet and Confer (hereinafter defined), the parties agreed to take certain matters under advisement and to return to each other with either an update or the production of some or all of the documents and information in dispute. *See* Med Way's Correspondence of September 2, 2022, Ex. 1.

[2] Drive asserts prior trademark use and thus superior right in and to what it purports to be a "registrable" trademark, which bears many iterations and forms (e.g., Med-Aire, MedAire, and Med Aire), all of which have failed to attain registrable status with the United States Patent and Trademark Office ("USPTO"), and which stand rejected by the USPTO as likely to cause confusion with Med Way's registered MEDAIR® trademark. Drive has failed to produce a single specimen of actual trademark use, other than an Amazon posting from 2021, which was posted well after the USPTO's issuance of a registration for Med Way's MEDAIR® trademark and which is evidence of Drive's ongoing counterfeiting of Med Way's registered trademark. Interestingly, aside from that one item, the remainder of Drive's production shows nothing more than Drive's use of its "Med-Aire" term as a product descriptor for goods sold under its registered Drive® trademark.

failure to comply with the rules governing discovery[3]), through the introduction of misinformation and mischaracterizations of the very claims for which Drive purports to seek redress.[4]

### A. Med Way Has Fully Complied With Its Discovery Obligations

During the parties' August 26 Meet and Confer, Med Way confirmed to Drive that it has, subject only to its ongoing discovery obligations and its promise to Drive to follow-up with its client regarding certain internal emails, which Med Way already explained are the subject of its Privilege Log, fully complied with its obligations under Rule 26 of the Fed. R. Civ. P. Nonetheless, Drive, true to form, filed its meritless Motion in what can solely be explained as a bad faith attempt to mislead the Court.

In its papers, Drive casts Med Way as blithely and purposefully ignoring its discovery obligations. Nothing could be further from the truth. No different from Drive, Med Way discovered additional potentially responsive documents after August 8, 2022, and produced them in accordance with Fed. R. Civ. P. Rule 26(e). Drive hypocritically claims it "complied with Your Honor's [production] order . . . [and] produced over 1,000 responsive documents by August 8, 2022" when in reality Drive produced more than six thousand pages of documents after the deadline. *See* Drive's Motion to Compel, p. 1, n. 1; *see also* Drive's Counsel's Correspondence of August 11, 2022, Ex. 7.

Drive further compounds its tall tale by alleging Med Way's document production remains incomplete. This too is false. As Med Way confirmed during the Meet and Confer, Med Way recently discovered additional responsive documents which Med Way's counsel promised to, and did, produce to Drive later that day. Drive's immediate filing of its Motion to Compel following the Meet and Confer not only short-circuited Med Way's ability to produce these documents in a reasonable timeframe, it also illustrates the nefarious motive behind its filing of the Drive Motion. The fact remains that Med Way has indeed completed its document production and fully complied with its discovery obligations. In contrast, Drive has submitted evasive and incomplete responses to Med Way's Requests for Production and failed to provide justification for the same.[5] *See* August 26, 2022 Letter from Med Way's Counsel, Ex. 5.

Drive also takes issue with Med Way's purported failure to produce internal emails. Med Way notes that, in stark contrast to Drive, which has more than a thousand employees, Med Way has only five (5), and thus has little need to communicate internally by email. *See* Internet

---

[3] A review of Exhibits 2 - 5 provides ample evidence of what has transpired during discovery in this matter. In sharp contrast to Drive's allegations, Med Way has not only complied, but has more importantly regularly made good faith efforts to elicit Drive's cooperation and, with it, Drive's production of relevant documents and information necessary to discern the sum and substance of Drive's allegations.

[4] Drive served its Motion at 4:09 E.S.T., only four hours after the meeting's conclusion without even making the effort to update the Motion to include a fair and accurate portrayal of the parties' actual discussion. *See* Notice of Electronic Filing, Letter Motion to Compel by Medical Depot, Inc., Ex. 6.

[5] It is also notable that the approximately 15,500 pages of documents produced by Drive to date include hundreds of pages of duplicates and well over fourteen thousand pages of documents unrelated to Drive's "Med-Aire" term. *See* Med Way's Letter of August 16, 2022, Ex. 4.

Company Profile, Ex. 8. Nevertheless, Med Way, as confirmed during the Meet and Confer, will continue to review its records for any additional documents responsive to Drive's requests.

Drive additionally complains of alleged deficiencies in Med Way's privilege log. However, true to its word, Med Way produced an updated privilege log six hours after the Meet and Confer. This further exemplifies how Drive's bad faith antics continue to needlessly waste this Court's valuable time and resources and drive up the cost of litigation. *See* Med Way's Revised Privilege Log, Ex. 9; *see also* August 26, 2022 Correspondence from Med Way's Counsel, Ex. 5.

### B. The Format of Med Way's Electronic Documents

Drive ignores the fact that Med Way previously re-produced its documents in a new format in response to Drive's request for searchable documents. *See* July 28, 2022 Letter from Drive's Counsel, Ex. 10, p. 2; *see also* August 8, 2022 Correspondence from Med Way's Counsel, Ex. 3. Unsatisfied, Drive requests that Med Way again re-produce all its documents in a "native format," even though in Drive's First Request for the Production of Documents Drive explicitly requested that Med Way produce documents in TIFF image format. *See* Plaintiff's First Request for the Production of Documents, Ex. 11, p. 4.

Despite the burdensome nature of this request, Med Way has, in the spirit of good faith, once again re-produced all its documents in both TIFF and native format.[6] Absent from Drive's Motion is the fact that Med Way completed these steps prior to submitting its Opposition. Regrettably, Drive failed, once again, to mention that Med Way agreed to take Drive's concerns under advisement during the Meet and Confer, opting instead to file its Motion without giving Med Way a reasonable opportunity to comply.

Moreover, Drive has not established a right to embedded metadata. Drive invokes no applicable caselaw to buttress its claims of entitlement to such material.[7] And, Drive overlooks the fact that "Courts in the Second Circuit have denied requests for metadata, even where the metadata itself might have some probative value, where that potential value is outweighed by the cost and burden of production." *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*, Civ. No. 14-md-2542 (VSB), 2020 WL 1940557 (S.D. N.Y. Apr. 22, 2020) (internal quotations omitted).

As a preliminary matter, Med Way disputes the notion that Drive's desired metadata has any probative value at all. Drive fails to articulate how the metadata of Med Way's produced documents would help illumine "the critical importance of timing in this case." Many of the documents produced by Med Way contain ample evidence of such documents' creation. Emails, for instance, plainly state their dates of transmission, with or without embedded metadata. In

---

[6] Med Way's principals are willing to aver that they produced their documents in as near their native format as they can. It is noteworthy that one of the principals is a domiciliary of Cairo, Egypt, and the other, while presently residing in Atlanta, Georgia, was born in the People's Republic of China. Neither one speaks English as a first language, and both have done their best to comply with their discovery obligations.

[7] The lone case cited by Drive, *Saliga v. Chemtura Corp.*, Civ. No. 3:12-cv-832 (RNC), 2013 WL 6182227 (D. Conn. Nov. 25, 2013), does not support Drive's contention and is irreconcilable with the present facts.

fact, Med Way previously communicated its concerns regarding Drive's failure to controvert this issue. *See* Med Way's August 2, 2022 Letter, Ex. 2. Further, Courts have traditionally rejected efforts to compel production of such metadata where, as here, "it [was] far from clear that even the most exhaustive retracing of steps would yield useful information beyond that which the Plaintiffs already have." *See Aguilar v. Immigration and Customs Enforcement Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 360 (S.D. N.Y. 2008).

Moreover, Drive overstates the significance of proving priority; this case actually hinges on Drive's failure to properly use its purported Med-Aire term in commerce as a trademark prior to Med Way's actual use of its registered MEDAIR® trademark at least as early as 2018. Frankly, while Drive purports to have sold its products under the term Med-Aire since 2007, Drive has yet to provide a single document to substantiate this claim, which begs the question of where are all of Drive's documents demonstrating actual use over the past fifteen (15) years. Contrary to Drive's claims, the fact is that these dates are not even remotely close, thus removing any credence to Drive's assertion that "priority" is a meaningful issue here.

Drive's preoccupation with metadata appears little more than a pretext to impose a steep, additional burden on Med Way. Requiring the principals of Med Way to spend untold hours combing through their records in response to yet another unfounded demand from Drive to secure needless metadata will only result in a significant burden to their already strapped time and resources. The vast disparity in resources between Drive and Med Way only accentuates the unfairness.

### C. The Discoverability of Med Way's Trademark Search Report

While Drive chose to waive its privilege and produce its trademark clearance report, in which Med Way's registered MEDAIR® trademark appears first, counsel to Med Way does not presently see any basis for acting likewise.[8] *See, e.g., Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 WL 2706965, at *5 (N.D. Ill. Aug. 25, 2009) (holding "the Court declines to adopt a bright-line rule that would render all documents that demonstrate the execution of a trademark search and all trademark search reports, non-privileged."). All remaining documents that Med Way discovered, responsive to this request, fall, as previously stated in correspondence and during the Meet and Confer, within the attorney client privilege. *Id.*

In conclusion, Med Way respectfully prays this Court deny the Drive Motion, compel Drive's good faith cooperation and production of documents and information, and, if the Court deems appropriate, impose sanctions pursuant to Rule 37(b)(2)(A)(i)-(iv) Fed. R. Civ. P.

Respectfully submitted,

Todd S. Sharinn

---

[8] Med Way will produce the trademark search report *in camera* for Your Honor's review and pursuant to any Court Order.