UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MEDICAL DEPOT, INC., d/b/a DRIVE DEVILBISS
HEALTHCARE,

                   Plaintiff and Counter-Defendant,

    - against-

MED WAY US, INC.,

                Defendant and Counter-Plaintiff.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-01272 (OEM) (SIL)

ORELIA E. MERCHANT, United States District Judge:

This is an action between two medical supply companies who use similar marks—"Med-Aire" and "MEDAIR®"—to brand the medical air mattresses they sell. The companies dispute who has the right to use the "Med-Aire" or "MEDAIR®" mark.

Plaintiff Medical Depot Inc., doing business as Drive DeVilbiss Healthcare ("Drive" or "Plaintiff"),[1] brings this action for: (1) federal trademark infringement, (2) unfair competition, and (3) cancellation of trademark registration No. 6,116,976, against Defendant Med Way US, Inc. ("Med Way" or "Defendant").[2] *See generally* Compl. Med Way brings counterclaims against Drive for: (1) federal trademark infringement, (2) unfair competition and false designation of origin, (3) federal trademark dilution, (4) declaratory judgment regarding Drive's "fraud" on the United States Patent and Trademark Office ("USPTO"), (5) declaratory judgment regarding Drive's "misuse" of a trademark, (6) declaratory judgment regarding Med Way's "non-infringement" of Drive's mark, (7) trademark infringement under New York state law, (8) unfair

---

[1] Drive, a manufacturer and distributor of homecare medical products, sells a variety of medical products to individuals, home healthcare providers, healthcare distributors, and retailers. Complaint, ECF 1 ("Compl.") ¶¶ 15-16.

[2] Med Way, a privately owned and operated global company, provides wound care products to care facilities and home health professionals. Answer, Affirmative Defenses, and Counterclaims, ECF 13 ("Med Way's Answer") ¶¶ 94-95.

competition under New York state law, (9) trademark dilution under New York state law, (10) unlawful deceptive acts and false advertising under New York state law, and (11) tortious interference with Med Way's business and prospective economic advantage.  *See generally* Med Way's Answer.

Before the Court are Drive's motion for summary judgment and Med Way's motion for partial summary judgment as to Drive's claims.  *See generally* Motion for Summary Judgment by Drive, ECF 71 ("Drive's Mot. for Sum. J."); Drive's Memorandum of Law in Support of its Motion for Summary Judgment, ECF 71-2 ("Drive's Mem."); Motion for Partial Summary Judgment by Med Way US, Inc., ECF 70 ("Med Way's Mot. for Part. Sum. J."); Med Way's Memorandum of Law in Support of its Motion for Partial Summary Judgment, ECF 70-1 ("Med Way's Mem."). For the reasons below, Drive's motion is granted in part and denied in part, and Med Way's motion is granted in part and denied in part.

## BACKGROUND[3]

### A. Drive's Use of the "Med-Aire" Mark

Drive has sold air mattresses using the "Med-Aire" mark since 2007.  Def.'s Unsealed Counter 56.1 ¶ 2.  From 2007 to 2023, Drive's "Med-Aire" mattresses amassed gross sales of $160 million, and $79 million of those sales were made between 2007 and 2017.  *Id.* ¶¶ 3-4.

The "Med-Aire" mark has been used on at least some of Drive's external packaging for its medical air mattress products intermittently since 2007.  Def.'s Redacted Counter 56.1 ¶ 5.  Drive has affixed a trademark symbol, ®, which denotes federal trademark registration, to at least some

---

[3] The following facts are taken from the parties' respective Local Rule 56.1 statements.  *See* Drive's 56.1 Statement of Material Facts, ECF 81-1 ("Pl.'s 56.1"); Med Way's Counterstatement of Undisputed Material Facts, ECF 69-4 ("Def.'s Unsealed Counter 56.1"); Med Way's Counterstatement of Undisputed Material Facts, ECF 73-24 ("Def.'s Redacted Counter 56.1"); Drive's Counterstatement of Material Facts in Response to Med Way's Request for a Pre-Motion Conference, ECF 51-1; Drive's Counterstatement of Material Facts, ECF 82-48, ("Pl.'s Unsealed Counter 56.1").  All facts herein are undisputed unless otherwise noted.

of its federally registered trademarks in connection with the "manufacturing, marketing, advertising, distributing, offering for sale, and sale of Drive's products in the United States." Pl.'s Unsealed Counter 56.1 ¶ 9. Drive has also used a ™ symbol, which denotes claimed rights in a common law trademark, in connection with at least some of its unregistered marks between 2007 and 2020. *Id.* ¶ 10. Drive did not affix an ® or ™ to generic or purely descriptive terms. *Id.* ¶ 11. Drive used the ™ symbol in connection with its "DRIVE" trademark when that mark was appended to Drive's "Med-Aire" mattress products between 2007 and 2020. *Id.* ¶ 12. However, Drive did not use the ™ symbol in connection with its "Med-Aire" mark until 2020, two years after Med Way started using its "MEDAIR®" mark. Def.'s Redacted Counter 56.1 ¶ 17.

Drive made ample use of the "Med-Aire" mark. The "Med-Aire" mark appeared on at least certain shipping labels for Drive's air mattress products, alongside product descriptions in the same font, color, size, location, typeset, and style as the rest of the product descriptions, at least intermittently, since 2007. Def.'s Counter 56.1 ¶ 7. The "Med-Aire" mark appeared inside and on the cover of a user manual included with at least some "Med-Aire" air mattress systems. *Id.* ¶ 8. The mark also appeared on the face plate of the air pump that accompanied the mattress system, which is sold separately. *Id.* ¶¶ 9-10. The "Med-Aire" mark also appeared in at least some of Drive's catalogs and brochures since "as early as 2007." *Id.* ¶ 12. Drive also distributed monthly promotional "Med-Aire" product catalogs. *Id.* ¶ 13. Finally, the "Med-Aire" mark has been displayed in flyers at retailers of "Med-Aire" products since 2011, at trade shows since 2007, and on websites since at least as early as 2009. *Id.* ¶¶ 14-16.

**B. Med Way's Use of the "MEDAIR®" Mark**

Med Way is the owner of the "MEDAIR®" mark which is a federally registered trademark. Pl.'s Unsealed Counter 56.1 ¶ 1. Med Way has displayed the trademark on its goods in interstate

commerce since at least as early as April 1, 2019. *Id.* ¶ 8. Med Way stamps its "MEDAIR®" trademark on its medical air mattresses and pumps. *Id.*

**C. Med Way and Drive's USPTO Registration Applications**

On October 28, 2019, Med Way hired counsel to conduct a trademark clearance search for the term "MEDAIR®," and variations thereof, which did not reveal Drive's "Med-Aire" mark. *Id.* ¶¶ 3-4. Drive contends that only federally registered marks, and not common law marks, like its "Med-Aire" mark, would have shown up in the trademark clearance search. *Id.* ¶ 4.

On December 10, 2019, Med Way filed a use-based trademark application for the mark "MEDAIR®" in connection with "air mattresses with pump, for medical purposes" with a first use date of April 1, 2019. *Id.* ¶¶ 1, 8. The USPTO published Med Way's "MEDAIR®" mark for opposition on May 19, 2020. *Id.* ¶ 5. The mark matured into a registration on August 4, 2020, with registration No. 6,116,976. *Id.* ¶ 7.

Drive and its affiliates have 67 federally registered trademarks. *Id.* ¶¶ 13, 14. Drive waited until July 8, 2020, thirteen years after its claimed first use of the "Med-Aire" mark, to conduct a trademark clearance search for the term. *Id.* ¶¶ 15-16. Drive's July 8, 2020, trademark clearance search identified Med Way's "MEDAIR®" trademark as the first result. *Id.* ¶ 17. On July 28, 2020, Drive tried to federally register its "Med-Aire" mark by filing U.S. Trademark Application No. 90/078,692 with the USPTO. *Id.* ¶ 18. Drive's U.S. Trademark App. No. 90/078,692 was the first and only trademark application Drive filed with the USPTO for "Med-Aire." *Id.* ¶ 19.

Specifically, Drive filed an application with the USPTO to register the "Med-Aire" mark in connection with "[m]edical products, namely, therapeutic mattresses, beds, seats and cushions; [p]ads for preventing pressure sores on patient bodies; air mattress systems for medical support comprising intake air filters for the control unit, orthopedic padding, fitted covers for orthopedic

padding, pumps, bladders, tubings and hoses for facilitating air flow to the mattress" with a first use date of November 2007.  Pl.'s 56.1 ¶ 35.  On November 17, 2020, the USPTO rejected Drive's first specimen (a product catalog) for, *inter alia*, likelihood of confusion and failure to submit an acceptable webpage/print catalog display.  *Id.*  ¶ 37; Pl.'s Unsealed Counter 56.1 ¶ 21.  Drive then submitted a substitute specimen with "(i) two websites showing the MED-AIRE Mark in association with an image of a MED-AIRE Alternating Mattress System, which could be purchased directly from the website; and (ii) a user manual that is included with the MED-AIRE 8 Alternating Pressure Mattress Replacement System with Low Air Loss."  Pl.'s 56.1 ¶ 38.  On May 11, 2021, the USPTO determined that Drive's substitute specimen met the requirements to establish trademark use in commerce.  *Id.* ¶ 41.  However, the USPTO refused to register Drive's mark for likelihood of confusion with Med Way's "MEDAIR®" mark and suspended Drive's application pending disposition of Med Way's prior-filed application.  *Id.* ¶ 42; Pl.'s Unsealed Counter 56.1 ¶ 22.  After Med Way's "MEDAIR®" mark was officially registered, Drive filed a petition to cancel Med Way's mark.  Pl.'s 56.1 ¶ 43.  The Trademark Trial and Appeal Board ("TTAB") suspended the cancellation proceeding pending the outcome of this civil case.  *Id.* ¶ 44.

## PROCEDURAL HISTORY

On March 8, 2022, Drive commenced this action against Med Way alleging trademark infringement and unfair competition and seeking the cancellation of Med Way's federally registered trademark.  *See* Compl.  Med Way answered Drive's complaint, asserting 17 defenses and 11 counterclaims against Drive.  *See* Med Way's Answer.

On October 7, 2024, Drive and Med Way filed cross motions for summary judgment.[4]  On October 16, 2024, Med Way filed a motion to strike portions of Exhibits A and B of Drive's Reply

---

[4] Med Way's Mot. for Part. Sum. J.; Drive's Mot. for Sum. J.; Response in Opposition re: Motion for Partial Summary Judgment filed by Drive, ECF 72 ("Drive's Response in Opp."); Response in Opposition re: Motion  for Summary

to Med Way's opposition to Drive's motion for summary judgment and requested oral argument. Motion to Strike, ECF 79 ("Mot. to Strike").  On October 17, 2024, the Court granted Med Way's request for oral argument, which was held on October 30, 2024.  At the close of argument, the Court denied Med Way's Motion to Strike.  *See* October 30, 2024, Oral Argument Transcript, ECF 88 ("Tr.").

Also on October 17, 2024, the Court granted Drive's motion to file documents under seal, Motion for Leave to Electronically File Document under Seal by Drive, Inc. ECF 69, and on October 21, 2024, the parties re-filed their motions for summary judgment with supporting documents and memoranda of law under seal.[5]

## LEGAL STANDARDS

### A. Motion for Summary Judgment

The moving party bears the burden of showing that they are entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)).  Therefore, "if 'there is any evidence in the record from any source from which a reasonable inference in the [non-moving

---

Judgment filed by Med Way US, ECF 73 ("Med Way's Response in Opp."); Reply in Support re: Motion  for Summary Judgment filed by Drive, ECF 74 ("Drive's Reply"); Reply in Support re: Motion  for Partial Summary Judgment filed by Med Way US, ECF 75 ("Med Way's Reply").

[5] *See* Drive's Sealed Motion for Summary Judgment, ECF 80 and 81 ("Drive's Sealed Mot. for Sum. J."); Med Way's Sealed Motion for Partial Summary Judgment, ECF 82 ("Med Way's Sealed Mot. for Part. Sum. J."); Drive's Response in Opposition re: Motion for Partial Summary Judgment, ECF 83 ("Drive's Sealed Response in Opp."); Response in Opposition re: Motion for Summary Judgment filed by Med Way, ECF 84 ("Med Way's Sealed Response in Opp.); Reply in Support re: Motion for Summary Judgment filed by Drive, ECF 85 ("Drive's Sealed Reply"); Reply in Support re: Motion for Partial Summary Judgment filed by Med Way, ECF 86 ("Med Way's Sealed Reply").

party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

If the moving party meets its burden of demonstrating the absence of a disputed issue of material fact, then the burden shifts to the non-moving party to present "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014). The non-moving party cannot rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). If the evidence favoring the non-moving party is "merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

**B.  Motion for Permanent Injunction**

A plaintiff seeking a permanent injunction must satisfy a four-factor test. They must demonstrate: (1) that they have "suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *U.S. Sec. & Exch. Comm'n v. Citigroup Global Mkts., Inc.*, 752 F.3d 285, 296 (2d Cir. 2014).

**DISCUSSION**

Drive seeks summary judgment on its trademark infringement and New York unfair competition claims. Drive also seeks a judicial determination that Med Way's "MEDAIR®" trademark registration should be cancelled, and that Med Way's counterclaims fail as a matter of

law.  To the contrary, Med Way seeks a judicial determination on Drive's claims, in favor of Med Way.  The Court addresses each claim in turn.

## A. Drive's Federal Trademark Infringement Claim

Drive contends that Med Way infringed on Drive's trademark by using the "MEDAIR®" mark.

The Lanham Act is "the core federal trademark statute" in that it defines trademarks and governs trademark registration and protection.  *See Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145 (2023).  The Lanham Act defines a trademark as: "[A]ny word, name, symbol, or device, or any combination thereof" that a person uses "to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of the goods."  15 U.S.C. § 1127.

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, governs trademark infringement claims.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  The purpose of Section 43(a) is "to prevent consumer confusion regarding a product's source . . . and to enable those that fashion a product to differentiate it from others on the market."  *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) (quoting *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1220 (2d Cir. 1987)) (ellipsis in original).  Section 43(a) is comprised of two prongs: "Section 43(a)(1)(A), which seeks to prevent deceptive conduct that causes consumer confusion (often referred to as the infringement prong) (15 U.S.C. § 1125(a)(1)(A)), . . . [and] Section 43(a)(1)(B), which seeks to prevent deceptive commercial advertising (often referred to as the false advertising prong) (15 U.S.C. § 1125(a)(1)(B))."  Lanham Act Section 43(a) Claims, Practical Law Practice Note w-005-9404.  Section 43(a)(1)(A) "is generally the statutory basis for: unregistered trademark infringement

claims; false designation of origin claims; and false endorsement claims." *Id.* Section 43(a) creates a cause of action for infringement of unregistered trademarks.[6] Section 43(a) provides that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, [or] symbol, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). To prevail on a trademark infringement claim under Section 43(a), a plaintiff must show: (1) interest in a valid trademark, (2) use of the mark in commerce before the defendant began its use, and (3) likelihood of confusion.[7] The Court addresses each element in turn.

### 1. Interest in a Valid Trademark

Under the Lanham Act, a mark is only protectable if it is *both* distinctive and used as a mark. 15 U.S.C. § 1127; 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 3:1 (5th ed. 2017), ("[R]equirements for qualification of a word or symbol as a trademark can be broken down into three elements: (1) . . . [a] symbol . . . (2) . . . [used] as a mark . . . (3) . . . to identify and distinguish the seller's goods from goods made or sold by others."); *see also Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 414-15 (S.D.N.Y. 2012) ("[T]o be protected under the Lanham Act, a mark must [] be '*used* in a way sufficiently public to identify or distinguish the

---

[6] Claims for infringement of registered and unregistered trademarks fall under different sections of the Lanham Act. A claim for infringement of a registered trademark fall under Section 32(1) of the Lanham Act (15 U.S.C. § 1114(1)), whereas a claim for infringement of an unregistered trademark falls under Section 43(a)(1)(A).

[7] These requirements are generally the same as the requirements for registration of a mark under Section 2 of the Lanham Act. 15 U.S.C. § 1052; *see Two Pesos*, 505 U.S. at 768. However, the showing of use necessary to establish common law rights in a mark is sometimes greater than the showing of use necessary to support federal registration. *See, e.g., Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 505 (7th Cir. 1992) (holding that it is legal error for the court to equate the use necessary for registration and the use necessary to support nationwide common law rights in a mark).

9

marked goods in an appropriate segment of the public mind as those of the adopter of the mark.'" (quoting *Gameologist Grp., LLC v. Sci. Games Int'l, Inc.*, 838 F. Supp. 2d 141, 154 (S.D.N.Y. 2011) (emphasis added)).

### a. Distinctiveness of the "Med-Aire" Mark

The mark at issue here is distinctive. Marks are classified in categories of increasing distinctiveness and can be: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos*, 505 U.S. at 768 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). Marks that simply describe a product are not automatically "distinctive" because "they do not inherently identify a particular source, and hence cannot be protected." *Id.* at 769. Alternatively, a descriptive mark can be protected under the Lanham Act if the mark "has become distinctive of the applicant's goods in commerce," *id.*, that is, if the mark itself has acquired a "secondary meaning." *See Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938).

During oral argument on the instant motions and Med Way's motion to strike, Drive's counsel explained why the "Med-Aire" mark is suggestive and thus inherently distinctive. It is "suggestive" because "it requires some imagination and some thought" to understand the kind of goods it refers to. Tr. at 30:20-22. That is, "[y]ou know that it's medical-related because of the M-E-D, and you know that it's got something to do with air, but you don't exactly know that it's a *medical mattress*. And that's what makes [the term 'Med-Aire'] suggestive." *Id.* at 30:22-25. Drive's counsel likened the "Med-Aire" mark to the "Orange Crush" soda mark in that the "Orange Crush" mark indicates to consumers that the mark refers to something orange, but the mark does not suggest that it specifically refers to an orange *soda*. *Id.* at 31:1-3. As with "Orange Crush," counsel argued, "Med-Aire" requires a certain amount of "imagination" to comprehend what product(s) the mark is associated with. *Id.* at 31:4-6.

Med Way's counsel agreed with Drive's counsel, conceding that "Med-Aire" is a distinctive mark, in part because "Med-Aire" and "MEDAIR®" are phonetically identical. *Id.* at 52:3-5. The Court concurs that "Med-Aire" is distinctive.

### b. Use of the "Med-Aire" Mark as a Mark

Having found that "Med-Aire" is distinctive, the next issue is whether Drive used the "Med-Aire" mark as a trademark.

Med Way argues that "Drive never used its 'Med-Aire' phrase as a trademark and thus never created any rights therein prior to Med Way's first use of its 'MEDAIR®' trademark in July 2018." Med Way's Sealed Response in Opp. at 19. Instead of trademark use, Med Way posits, Drive's use of "Med-Aire" was descriptive, until 2020 when Drive started appending "Med-Aire ™" to various products. *Id.* at 21. Specifically, Med Way contends that Drive "repeatedly used its 'Med-Aire' phrase in a *non-trademark* manner in its brochures and catalogues, . . . by omitting the name entirely from product invoices in numerous instances, and by failing to classify the [ ] 'Med-Aire' products as anything other than 'low air loss' mattresses in Drive's catalogues and indexes." *Id.* at 19-20. (emphasis in original).

To merit protection, a trademark must be "used in a trademark way," meaning that it "must appear where consumers expect a trademark to appear, and it must be sufficiently set off from the surrounding text and images to attract notice." Alexandra J. Roberts, *Trademark Failure to Function*, 104 IOWA L. REV. 1977, 1981-82 (2019). Without such use, the mark fails to function as a trademark and is not entitled to federal legal protection. *See id.* at 1982 ("Without use as a mark, there can be no trademark, and consequently no trademark rights . . . When a mark does not actually indicate source or distinguish goods or services because of the way in which it is used, the USPTO refuses to register it based on its 'failure to function.'").

To determine whether Drive used "Med-Aire" as a mark, and is thus entitled to protection, the Court looks to one of the Supreme Court's most recent decisions on trademark use: *Jack Daniel's Props.*, 599 U.S. at 140. According to the Court in *Jack Daniel's Props.*, use as a trademark requires use "as a designation of source for [Defendants'] own goods." *Id.* at 148 (quoting 15 U.S.C. § 1125(c)(3)(A)). The primary purpose of a mark is to function as a source identifier, indicating "the source of goods, . . . [and] distinguish[ing] them from ones manufactured or sold by others." *Id.* at 157-58 (internal quotation marks omitted) (citing 15 U.S.C. § 1127). "*[W]hatever else it may do, a trademark is not a trademark unless it identifies a product's source* (this is a Nike) and distinguishes that source from others (not any other sneaker brand). In other words, a mark tells the public who is responsible for a product." *Id.* at 145-46 (emphasis added) (citations omitted). A trademark's ability to function as a source identifier is paramount: "Confusion as to source is the bête noire of trademark law—the thing that stands directly opposed to the law's twin goals of facilitating consumers' choice and protecting producers' good will." *Id.* at 147.

The TTAB also offers guidance on what qualifies as trademark use. The TTAB contends that "[t]he critical enquiry in determining whether a designation functions as a mark is how the designation would be perceived by the relevant public." *In re Eagle Crest, Inc.*, 96 U.S.P.Q.2d (BNA) 1227 (T.T.A.B. 2010). Specifically, the mark "must be used in such a manner that its nature and function [as a trademark] are readily apparent and recognizable without extended analysis or research and certainly without legal opinion." *Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 870 (S.D.N.Y. 1998), *aff'd*, 199 F.3d 1323 (2d Cir. 1999) (quoting *Ex parte Nat'l Geographic Soc.*, 83 U.S.P.Q. 260, 1949 WL 3854, at *1 (Dec. Comm'r Pat. 1949)).

Having established that the use as a mark analysis depends on how the relevant public views a mark, the Court now determines whether the "Med-Aire" mark is used as a source identifier by weighing various factors that may impact the relevant public's view.

When assessing use as a mark, "context is king."[8]  Common indicators suggesting that a word or phrase might be viewed by the public as a trademark include large font relative to surrounding text, all capital letters or initial capitals, distinctive print style, use of color, and prominent position on a label or in an advertisement.  In short, a mark must stand out from the surrounding text.  *See* 1 MCCARTHY, *supra*, § 3:4.

Additionally, advertising expenditures, for example, offer "circumstantial evidence of the possible effect that advertising of the trademark . . . may have on consumers' association of it with the source of a product or service." *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 246 (S.D.N.Y. 2022) (quotation marks omitted).  Advertising can be "effective in causing the relevant group of consumers to associate [the mark] with its source." *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1222 (2d Cir. 1987), *overruled on other grounds as recognized by Erchonia Corp. v. Bissoon*, 410 F. App'x 416, 418 (2d Cir. 2011)).

Additionally, sales, while not the "sine qua non of a use," *Blue Bell, Inc., v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir. 1975), are good evidence of "activity which would create an association in the mind of the consumer public between [the owners of the mark] and said mark." *Windows User, Inc. v. Reed Bus. Pub., LTD.*, 795 F. Supp. 103, 109 (S.D.N.Y. 1992).

---

[8] *See* Timothy Greene, *Trademark Hybridity and Brand Protection*, 46 LOY U. CHI. L.J. 75, 80 (2014) ("It is not just the term used that signifies source, but the term when used in combination with relevant disambiguating context, such as colors, typefaces, product packaging, logos, logo placement on packaging, product categories, and so on . . .  Rarely (if ever) do consumers encounter trademarks acontextually . . . ."); Laura A. Heymann, *Naming, Identity, and Trademark Law*, 86 IND. L.J. 381, 398 (2011) ("[I]t is context that indicates whether an unknown term is functioning as a trademark or name or in some other way.").

The classification of a mark can also be important in determining whether the mark has been used as such. *See In Re Eli Lilly & Co.*, 2015 WL 4241138, at *3 (T.T.A.B. 2015) (reversing the USPTO's refusal, finding that despite the lack of differentiation of size, style, or color, the reference was nonetheless used as a mark because the mark was "fanciful" and thus lacked "any relevant meaning as applied to the goods."). For example, where a mark is fanciful, "even though [the mark] may be embedded in other text, there is no danger that [the mark] will be interpreted as merely descriptive or informational matter . . . As such, its only purpose is to provide a unique identifier to a product that is otherwise identified only by a generic name and technical explanatory, information." *Id.*

Here, the Court concludes, "Med-Aire" has been used as a trademark. "Med-Aire" consistently appears as the first word or phrase in product descriptions, uses initial capital letters, appears at the product point of sale listings, appears in advertising and promotional materials, is referred to by consumers as "Med-Aire" in voluminous consumer communications, is suggestive, and products bearing the mark have amassed millions of dollars in sales, all of which supports finding that the mark has been used as a source identifier.

Med Way asserts various counterarguments in support of its point that Drive did not use "Med-Aire" as a mark.

First, Med Way argues that Drive's evident ability to use marks as source identifiers, like the "Drive" house mark, combined with Drive's choice to use "Med-Aire" differently, shows that Drive had no intention of using "Med-Aire" as a mark. Med Way's Sealed Mot. for Part. Sum. J. at 6. Med Way points to a case called *Jaymo's Sauces*, arguing that the mark at issue in that case was used there in the way Drive uses "Med-Aire" here. Med Way's Sealed Mot. for Part. Sum. J. at 9; *see Jaymo's Sauces LLC v. Wendy's Co.*, 19-CV-01026, 2021 WL 4712685, at *4 (C.D. Ill.

Oct. 8, 2021). The *Jaymo's Sauces* case involved a dispute over the use of the term "S'Awesome," a term for which both Jaymo's Sauces and Wendy's claimed trademark rights. *See generally Jaymo's Sauces*, 2021 WL 4712685. In *Jaymo's Sauces*, the court held that while the mark "S'Awesome" contained some attention-grabbing qualities, it was not an adequate source identifier in part because of the mark's nonprivileged placement, the sauce label's emphasis on other (descriptive) terms, and the comparatively small, plain font of the "S'Awesome" mark. *Id.* at *7. The court also found that Jaymo's marketing materials, which featured only "occasional" use of the "S'Awesome" term, further supported its conclusion that "S'Awesome" did not function as a source identifier. *Id.* As the court wrote, "While presentation of an alleged mark on a product label may . . . establish trademark use, the manner in which Jaymo's presents the term on its label fails to do so. That coupled with the *de minimus* use of the term in the proffered marketing materials demonstrates Jaymo's has not been using the term in a manner sufficient to render it an indicator of source." *Id.* The Court disagrees with Med Way's attempts to analogize Drive's use to that of Jaymo's Sauces. Drive's use of "Med-Aire" as an individual product mark, even as compared to its use of the house mark ("Drive"), does not show a lack of intent to use "Med-Aire" as a mark. A house mark and a product mark can be used as trademarks simultaneously. Moreover, Med Way's analogy to the *Jaymo's* holding ignores crucial distinctions between Drive's use and Jaymo's Sauces' use. Drive does not emphasize other non-trademarked phrases, images, or terms relative to "Med-Aire" on labels and in promotional materials. And Drive has frequently used the "Med-Aire" mark when promoting its "Med-Aire" products, unlike Jaymo's Sauces LLC's "de minimus" use of "S'Awesome" in its marketing materials. For these reasons, the instant case is distinguishable from *Jaymo's Sauces*.

Second, Med Way asserts that the "Med-Aire" mark appears inconsistently and has never been affixed to one of Drive's products.  Med Way's Sealed Mot. for Part. Sum. J. at 9.  However, the Court has already determined that Drive's use of "Med-Aire" was consistent enough to warrant a finding that Drive used "Med-Aire" as a mark, *see supra* Discussion, Section A, therefore, this argument fails.

Third, Med Way asserts that there is no consumer perception of "Med-Aire" as a trademark—as evidenced by Drive's failure to submit a brand awareness survey or a marketing expert report.  Med Way's Sealed Mot. for Part. Sum. J. at 22.  According to Drive, consumers and other third parties have referred to Drive's products by the "Med-Aire" brand name.  Def.'s Redacted Counter 56.1 ¶ 18.  Med Way disputes that consumers recognize the "Med-Aire" mark, arguing that "an objective review of Drive's consumer complaints leaves no doubt that consumers do ***not*** regularly refer to the [] medical air mattress products" by "Med-Aire" and instead "refer to these products by various portions of the product descriptions, [] model number, [] the full product description reproduced verbatim, or as DRIVE™ mattresses, demonstrating a wholesale lack of awareness among consumers of 'Med-Aire' as a source identifier or trademark." *Id.* (emphasis in original).  The Court finds the 125 pages of consumer communications regarding "Med-Aire" products, Declaration of Tony Crisitello in support of Plaintiff's Motion for Summary Judgment - Ex. 21, Consumer Correspondence, ECF 80-24, sufficient to establish consumer awareness of "Med-Aire" as a mark.  The evidentiary import of the information gleaned from the consumer communications Drive submits is similar to that of a brand awareness survey.  The evidence Drive provides is sufficient to establish that consumers perceive "Med-Aire" as a source identifier and thus that "Med-Aire" functions as a trademark.

Med Way further argues that Drive fails to cite legal precedent to support the proposition that its usage is trademark usage.  Med Way's Response in Opp. at 14.  Rather, Med Way asserts, Drive's arguments ignore the Second Circuit's requirements that trademark use requires using a mark prominently, putting the mark in large font, and other characteristics.  *Solid 21, Inc. v. Breitling U.S.A., Inc.*, 96 F.4th 265, 276 (2d Cir. 2024).  However, the case law Med Way cites does not support its contention.  As both parties concede, the "Med-Aire" mark is not descriptive. The case law cited by Med Way addresses the failure of *descriptive* terms—not suggestive terms— to function as trademarks.  Size, location, and other characteristics may be determinative for trademark use for descriptive terms that have acquired secondary meaning, but Med Way has not pointed to legal precedent governing the use of *suggestive* terms to support its point.

Finally, Med Way argues that Drive's failure to use "Med-Aire" in marketing and promotional materials is fatal to Drive's ability to claim it used "Med-Aire" as a source identifier. Med Way's Sealed Mot. for Part. Sum. J. at 12-15.  According to Med Way, Drive failed to distinguish, set-off, stylize, or otherwise draw consumer attention to "Med-Aire" as a discrete source identifier.  *Id.*  However, given the prevalence of "Med-Aire" on Drive's promotional materials dating back to 2007, its appearance on the pumps, proximity to the house mark ("Drive"), ample consumer communication mentioning the mark by name, the mark's prominence at the start of most product descriptions, and the mark's classification as (at least) suggestive, the Court finds that "Med-Aire" functioned as a source identifier.  Thus, Drive's use of "Med-Aire" constituted trademark use.

### 2.  Use of the "Med-Aire" Mark in Commerce

The second element that Drive must prove to establish infringement under Section 43(a) of the Lanham Act is that Drive used "Med-Aire" in commerce, and that it did so before Med Way

used "MEDAIR®" in commerce.  Drive argues that it has been using the "Med-Aire" mark since 2007, that the ways in which it has used the mark have been recognized to constitute use in commerce, and therefore that Med Way's use of "MEDAIR®" in commerce constitutes infringement under 15 U.S.C. § 1125(a).  Tr. at 30.

> The Lanham Act defines "use in commerce" as follows:
>
> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark.  For purposes of this chapter, a mark shall be deemed to be in use in commerce—
> (1) on goods when—
>> (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and
>> (B) the goods are sold or transported in commerce[.]

15 U.S.C. § 1127.  To satisfy the "use in commerce requirement" a mark need not be used in any particular way; it need only be affixed to goods "in any manner."  *Id.* ; *see Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 125-26, 129 (2d Cir. 2009) (holding that Google's use of the plaintiff's trademark as a keyword to trigger the display of the advertiser's copy on Google's search results page and as a suggestion to advertisers constituted "use in commerce").

Drive has demonstrated that it made continuous, bona fide commercial use of the "Med-Aire" mark because it established that the mark appears on Drive's website, packaging for the mattresses, promotional materials, mattress pumps, point of sale listings, other products, and manuals.  *See, e.g.*, Declaration of Tony Crisitello in support of Plaintiff's Motion for Summary Judgment - Ex. 4, External Packaging Specs, ECF 71-7; *Id.* at Ex. 5, Shipping Label Photos, ECF 71-8; *Id.* at Ex. 7, User Manual Excerpts, ECF 71-10; *Id.* at Ex. 9, Proof and Photos of Pump Face Plate, ECF 71-9; *Id.* at Ex. 10, Catalogs, ECF 71-13; *Id.* at Ex. 13, Amazon Listings, ECF 71-16.

Additionally, Drive must establish that it has priority. Key to the Lanham Act is the concept that "trademark rights flow from priority and that priority is acquired through use." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146-47 (2d Cir. 2007) (citing 15 U.S.C. § 1057(c)) (stating that registration of a mark "shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect . . . against any other person except for a person whose mark has not been abandoned and who, prior to such filing[,] . . . has used the mark"). Thus, to prevail on an infringement claim, the purportedly infringed party must establish that they were the first to use a particular mark to identify their goods or services in a given market. *Id.* at 147. Drive has done so here. Drive has priority because it first used the "Med-Aire" mark in commerce in 2007 and Med Way did not use its "MEDAIR®" mark until more than a decade later.

Because Drive has established that "Med-Aire" is distinctive and was used as a mark, Drive has established that it has a valid interest in "Med-Aire" as a mark, and therefore, the mark is protectable.

### 3. Likelihood of Confusion as to the "Med-Aire" and "MEDAIR®" Marks

Finally, the third element that Drive must satisfy to establish infringement is likelihood of confusion. Drive must show that Med Way's unauthorized use of "MEDAIR®" is likely to cause confusion. Here, the likelihood of confusion is undisputed. *See* Tr. at 29:1-5; *see also* July 25, 2022 Initial Conference Transcript, ECF 20, at 5:3-10.

Therefore, Drive has satisfied each element of a Lanham Act trademark infringement claim and is entitled to summary judgment against Med Way.

### B.  Drive's Unfair Competition Claim

Drive also asserts an unfair competition claim, and Med Way asserts a counterclaim seeking a judicial determination that this claim fails.  *See* Med Way's Sealed Mot. for Part. Sum. J. at 1.

To succeed on an unfair competition claim, a plaintiff must establish (1) a Lanham Act claim *and* (2) a defendant's bad faith or intent.  *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 424 (S.D.N.Y. 2018); *see also Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 56 n.3 (2d Cir. 2022) (citing *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997)) ("Under New York law, common law unfair competition claims closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent.").  For a plaintiff to show bad faith at the summary judgment stage, it must show that "defendant . . . attempt[ed] to create the impression that it was affiliated with [plaintiff] . . . or intended to capitalize on plaintiff's good will."  *815 Tonawanda Street Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 649 (2d Cir. 1998) (reversing district court's decision where "[t]he court found 'no evidence that the defendant's adoption of [a mark] . . . had been intended to trade on goodwill developed by and for the plaintiff'").  Accordingly, "mere knowledge of the existence of [the] prior user does not constitute bad faith."  *Id*. at 649-50 (citing *Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 522 (C.C.P.A. 1980)).

Drive has established a Lanham Act claim against Med Way, *see supra* Discussion, Section A; thus, Drive need only also establish bad faith or intent to meet its burden for its unfair competition claim.  In support of its bad faith argument, Drive notes that Med Way's CEO, Dr. Ahmed Alawad, admitted that prior to Med Way adopting the "MEDAIR®" mark, he conducted a Google search for alternating air mattresses and low-pressure air mattresses that revealed Drive's

"Med-Aire" products.  Drive's Mem. at 13-14.  Additionally, Dr. Alawad admitted to having "physically examined" Drive's mattresses in a warehouse while developing his "MEDAIR®" products.  *Id.* at 14.  Therefore, according to Drive, "it is undisputed that Dr. Alawad was aware of Drive's Med-Aire products before adopting the mark."  *Id.*

However, Med Way argues that Drive has not established that Dr. Alawad, or anyone at Med Way, knew about Drive's "Med-Aire" mark prior to adopting the "MEDAIR®" mark.  Med Way asserts that its counsel conducted a clearance search which revealed no marks presenting a conflict.  Med Way's Response in Opp. at 2-3.  Further, Med Way notes that, although Dr. Alawad remembers seeing Drive mattresses at the warehouse, and seeing Drive products in a Google search, Dr. Alawad did not remember seeing Drive's "Med-Aire" branding related to a mattress in either setting.  *Id.* at 6-7.  Thus, while it may be undisputed that Dr. Alawad knew of the "Drive" brand generally, it is disputed that Dr. Alawad knew about the "Med-Aire" mark in particular. [9]

Drive has not carried its burden to show that Med Way acted with bad faith or intent.  Drive has not shown that Med Way attempted to present to the public that its products were affiliated with Drive's or that Med Way intended to capitalize on Drive's good will with consumers.  Rather, the only evidence of Med Way's "intent" that Drive presents is its (disputed) contention that Dr. Alawad became aware of the existence of Drive's "Med-Aire" products through his Google search and warehouse visit.  *See generally* Pl.'s 56.1.  The parties' dispute about Dr. Alawad's awareness is immaterial because a finding one way or the other is not enough to show that Med Way specifically intended to misappropriate Drive's labors and expenditures for itself by confusing Drive's customer base.  "The essence of an unfair competition claim under New York law is that

---

[9] In Dr. Alawad's deposition, he stated that he did not remember seeing the "Med-Aire" branding at any point during his past encounters with Drive's products.  Declaration of Ahmed Alawad - Ex. A, Deposition Testimony, ECF 73-14 ("Deposition Testimony") at 76:12-15, 77:9-84:6.

the defendant has misappropriated the labors and expenditures of another." *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). Even assuming *arguendo* that Dr. Alawad did see the "Med-Aire" mark associated with Drive's mattresses, under the circumstances presented here, Med Way's reliance on its counsel and their trademark search is consistent with good faith, and knowledge of a competitor's product alone is insufficient to show bad faith. *See Rosenthal A.G. v. Ritelite, Ltd.*, 986 F. Supp. 133, 144 (E.D.N.Y. 1997) ("Although Rite Lite's president Alex Rosenthal said at his deposition that Rite Lite had knowledge of plaintiff Rosenthal as a manufacturer of dinnerware, the Court is reluctant to find that these statements are conclusive evidence of bad faith."); *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996) ("Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith."); *id.* ("Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel."). Med Way has presented evidence that it relied on a trademark clearance search and advice from counsel. Drive's inability to produce evidence decisively showing bad faith is fatal to its claim. Therefore, Med Way is entitled to judgment as a matter of law on Drive's unfair competition claim.

For the above reasons, Drive's motion for summary judgment as to its unfair competition claim is denied, and Med Way's motion for summary judgment as to Drive's unfair competition claim is granted.

## C. Drive's Claim Requesting Cancellation of the "MEDAIR®" Mark's Federal Registration

Drive seeks summary judgment on its claim requesting the cancellation of Med Way's "MEDAIR®" federal trademark registration.

A party seeking federal trademark cancellation must prove standing and valid grounds to cancel the registration. 1 MCCARTHY, *supra*, § 20:41. A plaintiff has standing to seek cancellation of a federally registered trademark if it possesses "a real commercial interest in its own marks and a reasonable basis for its belief that it would be damaged in the absence of cancellation. This standard is met where, *inter alia,* (1) the trademark for which cancellation is sought has been cited against the applications of plaintiff's own trademarks, or (2) plaintiff is using the same or a similar mark for the same or similar goods." *Citigroup Inc. v. City Holding Co.*, 99-CV-10115 (RWS), 2003 WL 282202, at *15 (S.D.N.Y. Feb. 10, 2003) (citations omitted). Both circumstances apply here. Drive has standing to seek cancellation of Med Way's mark because (1) the "MEDAIR®" mark blocked Drive's "Med-Aire" federal registration application, and (2) the companies are using similar marks for the same goods.

Thus, the only remaining question is whether a valid basis to cancel Med Way's registration exists.

When a court finds that a "registrant is not entitled to ownership of [a] mark, the court is empowered to order cancellation of the registration." *Haggar Int'l Corp. v. United Co. for Food Indus. Corp.*, 906 F. Supp. 2d 96, 106 (E.D.N.Y. 2012) (citing 15 U.S.C. § 1119). Moreover, a trademark cannot be federally registered if it is likely to cause confusion with a senior mark. *See Patsy's Italian Rest., Inc. v. Bana*s, 575 F. Supp. 2d 427, 465 (E.D.N.Y. 2008), *aff'd*, 658 F.3d 254 (2d Cir. 2011). Drive has established that it is the senior user of the mark. *See supra* Discussion, Section A. Further, the parties stipulated to a likelihood of confusion between their marks. Consequently, the Court finds that there is a valid basis to cancel Med Way's registration. *See Rainbow Apparel Distrib. Ctr. Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18, 24 (E.D.N.Y. 2013) ("'A prior user may [] obtain cancellation of a second user's registration of a mark on any ground that

23

would have prevented registration of the trademark in the first instance.' *See, e.g.*, 15 U.S.C. § 1052(d) (listing confusion with a previously used mark as one such ground for refusal")); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 743 (2d Cir. 1994) (same).

Accordingly, the Court grants Drive's motion for summary judgment on its cancellation claim, and the USPTO is directed to cancel Med Way's Registration No. 6,116,976.

### D. Med Way's Counterclaims

Drive also moves for summary judgment on Med Way's counterclaims, seeking a judicial determination that they fail as a matter of law. Med Way alleges the following counterclaims: (1) federal trademark infringement under 15 U.S.C. §1114, (2) unfair competition and false designation of origin under 15 U.S.C. §1125(a), (3) federal trademark dilution under 15 U.S.C. §1125(c), (4) declaratory judgment regarding Drive's "fraud" on the USPTO, (5) declaratory judgment regarding Drive's "misuse" of trademark, (6) declaratory judgment regarding Med Way's "non-infringement" of Drive's trademark, (7) trademark infringement under New York law, (8) unfair competition under New York law, (9) trademark dilution under New York General Business Law § 360(1), (10) unlawful deceptive acts and practices under New York General Business Law §349 and false advertising under New York General Business Law §350, and (11) tortious interference with Med Way's business relations and prospective economic advantage.

Med Way has not moved for summary judgment on its counterclaims. Therefore, the Court will determine whether, as Med Way suggests, there is a dispute of material fact that would prevent summary judgment in favor of Drive on each claim.

### 1. Med Way's First, Second, Sixth, Seventh, Eighth, and Ninth Counterclaims

Because Drive has priority in the mark, Med Way's federal trademark infringement, unfair competition, declaratory judgment of Med Way's non-infringement, state trademark infringement,

unfair competition, and state trademark dilution counterclaims fail.  Thus, the Court grants Drive summary judgment as to Med Way's First, Second, Seventh, Eighth, and Ninth Counterclaims.

### 2. Med Way's Third Counterclaim Regarding Federal Trademark Dilution

According to Drive, Med Way's federal trademark dilution counterclaim fails because the "MEDAIR®" mark is not famous.  Drive's Mem. at 17-18.  Med Way argues that its counterclaim should stand because "rapidly increasing sales numbers between 2018 and the present," create a "sufficient quantum of proof to submit the question [of whether the mark is famous] to the finder of fact."  Med Way's Response in Opp. at 22.

For Med Way to establish a federal dilution claim it must show that: "(1) the mark is famous; (2) [Drive's] use of the mark is made in commerce; (3) [Drive] used the junior mark after the senior mark [became] famous; and (4) [Drive's] use of the mark is likely to dilute the quality of the mark by blurring or tarnishment."  *Capri Sun GmbH v. Am. Beverage Corp*., 595 F. Supp. 3d 83, 182 (S.D.N.Y. 2022) (quoting *AM Gen. LLC v. Activision Blizzard, Inc.*, 450 F. Supp. 3d 467, 488 (S.D.N.Y. 2020)).  A "famous" mark is one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  *Id*. (internal quotation marks omitted).  In practice, "courts generally have limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public," such as "Hot Wheels," "Buick," "Budweiser," or "Barbie."  *Heller Inc. v. Design Within Reach, Inc.*, 09-CV-1909 (JGK), 2009 WL 2486054, at *3 (S.D.N.Y. Aug. 14, 2009) (collecting cases).

Med Way's dilution claim fails for two reasons.  First, because the Court finds that Drive is the senior, not junior, user of the mark.  Second, because Med Way's mark is not famous.  Med Way submits its "rapidly increasing sales numbers" as evidence that there is a dispute of material

25

fact regarding its mark's fame.  Med Way's Response in Opp. at 22.  The sales figures do show that Med Way's "MEDAIR®" product sales grew between 2020 and 2022.  However, because these sale numbers are not sufficiently substantial, they fall short of the high standard necessary to establish fame in the Second Circuit.  *See* Motion for Leave to Electronically File Document Under Seal - Ex. 24 Part 1, Med Way Financials, ECF 69-24; *Id.* at Ex. 24 Part 2, Med Way Financials, ECF 69-25.  Med Way's "MEDAIR®" products come nowhere close to the level of sales necessary to show "fame" for a federal trademark dilution claim.  And while Med Way's current growth trajectory may indicate that Med Way could meet those benchmarks in the future, federal dilution claims require showing that Med Way's mark ("MEDAIR®") had achieved fame *before* Drive's use of its mark ("Med-Aire").  Med Way cannot make this showing.

For these reasons, the Court grants Drive's motion as to Medway's Third Counterclaim, and Med Way's federal dilution claim is dismissed.

### 3.  Med Way's Fourth Counterclaim Seeking Declaratory Judgment of Drive's "Fraud" on the USPTO

Med Way seeks declaratory judgment, arguing that Drive's representation to the USPTO was fraudulent because Drive had no rights in the "Med-Aire" term and had only been using "Med-Aire" in a "generic" or "purely descriptive" manner.  Med Way's Response in Opp. at 22.  Drive argues that Med Way's fraud on the USPTO counterclaim fails because Drive's declaration to the USPTO was accurate.  Drive represented to the USPTO that it owned the "Med-Aire" mark and had been using the mark in commerce since 2007.  Drive's Mem. at 18-19.

In the Second Circuit, to prove fraud on the USPTO a party must show that the "applicant or registrant *knowingly* [made] a false, material representation with the intent to deceive the PTO." *MP Franchise, LLC v. Tarntino*, 826 F.3d 653, 659 (2d Cir. 2016) (quoting *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009)).  Because the Court has determined that Drive owned and used

the term "Med-Aire" as a mark in commerce, and had done so since 2007, Drive did not make a

false statement to the USPTO when it represented in its application that it used "Med-Aire" as a

mark.  Therefore, Drive's motion for summary judgment as to Med Way's Fourth Counterclaim

is granted, and Med Way's counterclaim for fraud on the USPTO is dismissed.

### 4.  Med Way's Fifth Counterclaim Seeking Declaratory Judgment of Drive's Trademark "Misuse"

Drive moved for summary judgment on Med Way's counterclaim seeking declaratory

judgment of Drive's trademark "misuse."  *See* Med Way's Answer ¶ 183.  Drive argues that Med

Way's trademark misuse counterclaim fails because it is not a cognizable cause of action.  Drive's

Mem. at 19.  The Court agrees.  *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp.

2d 453, 459-60 (S.D.N.Y. 2012) ("[M]isuse constitutes only an affirmative defense not a free-

standing cause of action.  Numerous courts have so held and have therefore declined 'to announce

or create an independent cause of action for trademark misuse.'").  Moreover, Med Way does not

defend Drive's attack on its claim in its opposition.  *See generally* Med Way's Response in Opp.

Accordingly, Med Way has waived the defense.[10]  For these reasons, the Court grants Drive's

motion for summary judgment as to Med Way's Fifth Counterclaim, and this counterclaim is

dismissed.

### 5.  Med Way's Tenth Counterclaim Alleging Deceptive Acts and Practices and False Advertising

Drive also moved for summary judgment on Med Way's Tenth Counterclaim under

Sections 349 and 350 of the New York General Business Law.

---

[10] *See Busher v. Barry*, 20-3587-CV, 2021 WL 5071871, at *3 (2d Cir. Nov. 2, 2021) (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)) ("Because the plaintiff[] failed to 'raise this argument in [her] opposition to summary judgment,' the 'argument has been waived.'").

Section 349 of the New York General Business Law declares that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" are unlawful. N.Y. GEN BUS. LAW § 349(a) (McKinney 2025). Section 350 of the New York General Business Law prohibits "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service." *Id.* § 350. Both laws were "designed to protect consumers against deception and false advertising." *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 95 (2d Cir. 2023) (citing *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 323, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002)). Moreover, "[t]he standard for recovery under [Section] 350, while specific to false advertising, is otherwise identical to Section 349." *Denenberg v. Rosen*, 71 A.D.3d 187, 897 N.Y.S.2d 391, 396 (2010) (quoting *Goshen*, 98 N.Y.2d at 324 n.1, 746 N.Y.S.2d 858, 774 N.E.2d 1190).

To state a claim under either law, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 944 N.Y.S.2d 452, 967 N.E.2d 675 (2012)).

Drive argues that Med Way cannot produce evidence of "substantial public injury." Drive's Mem. at 19-20. However, Med Way asserts that there is a split in this Circuit about the severity of the public injury necessary to substantiate a claim under these laws; therefore, Med Way does not have to demonstrate that the injury is substantial. Med Way's Response in Opp. at 22; *see Can't Live Without It, LLC v. ETS Express, Inc.*, 287 F. Supp. 3d 400, 412-13 (S.D.N.Y. 2018) ("Courts in [the Second] [C]ircuit differ regarding the severity of the threat to the public that Sections 349 and 350 require."). Med Way contends that the "safety and health-oriented nature of

these products," that is, tools "relied on by bedridden patients to mitigate bed sores and other serious medical conditions," creates a heightened public interest in avoiding confusion as to the source of the product.  Med Way's Response in Opp. at 22-23.  In other words, Med Way argues that these statutes are designed to capture injuries of the kind caused by confusion about health products and that at least some of "Drive's medical air mattress products have sufficiently mediocre reviews [so] as to warrant reasonable questions as to their safety, functionality, and quality [so] as to raise a triable issue of fact on this claim."  *Id*.; *see* Supplemental Declaration of Todd S. Sharinn in support of Med Way's Opposition to Drive's Motion for Summary Judgment, ECF 73-1 ¶ 11 (depicting "[t]rue and accurate Amazon reviews reflecting mixed consumer sentiment for certain of Drive's medical air mattress products").

Even if Drive engaged in consumer-oriented misconduct that was materially misleading, Drive argues that Med Way has not shown any public injury and notes that "a vague reference to 'sufficiently mediocre reviews' does not transmogrify this action into something more."  Drive's Reply at 8-9.  The Court agrees.  The injury need not be "incredibly grave" or "great," but there must be an injury, *Can't Live Without It*, 287 F. Supp. 3d at 412, and Med Way has offered no evidence of an injury.  Med Way's evidence consists of a reference to "mediocre reviews," but many products receive "mediocre reviews."  The import of Drive's "mediocre reviews" is especially hard to measure without knowing how Med Way's mattress reviews compare.  That is, Med Way has not established that its reviews are or were any better than Drive's.  Accordingly, Med Way has presented no evidence establishing a dispute of material fact as to this counterclaim.

Therefore, Drive's motion for summary judgment dismissing Med Way's Tenth Counterclaim for violation of New York's deceptive acts and false advertising statutes is granted, and Med Way's Tenth Counterclaim is dismissed.

### 6.  Med Way's Eleventh Counterclaim Alleging Tortious Interference

Drive also seeks summary judgment on Med Way's Eleventh Counterclaim for tortious interference with business relations and prospective economic advantage.  Med Way asserts that Drive "intentionally, maliciously, and without justification . . . deprive[d] Med Way of its existing and prospective business relationships through its misappropriation and misuse of the MEDAIR® trademark."  Med Way's Answer ¶ 221.  Med Way contends that Drive intentionally copied Med Way's trademark and then falsely alleged senior trademark rights.

To establish a claim for tortious interference with prospective economic advantage under New York law, the plaintiff must demonstrate that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003); *see also Zahler v. Empire Merchs., LLC*, 11-CV-3163 (JG) (CLP), 2012 WL 273698, at *6 (E.D.N.Y. Jan. 31, 2012) (explaining that allegations of tortious interference with business relations and tortious interference with prospective economic opportunity "require a basic three-party structure: A (the plaintiff) has a contract or relationship with B (a third party) and C (the defendant) interferes by inducing B to breach the contract or cease doing business with A, causing harm to A").

Drive argues that Med Way has failed to adduce evidence showing (1) causal harm to any specific business relationship between Med Way and a third party, or (2) that Drive intentionally interfered with such relationship, or otherwise used dishonest, unfair, or improper means to do so.  Drive's Mem. at 20.  Med Way responds that Drive interfered with its sales by: initiating "vexatious cancellation proceedings before the TTAB," initiating this civil action, and "using

'Med-Aire' as a trademark in February 2021, following [Drive's] discovery of Med Way's MEDAIR® trademark."  Med Way's Response in Opp. at 23.  Med Way undoubtedly had a business relationship with consumers.  Following Drive's discovery of Med Way's use of the "MEDAIR®" mark, Drive became aware of that relationship and intentionally filed cancellation proceedings against Med Way.  However, Med Way cannot show that Drive's initiation of the cancellation proceedings arose out of malice, or was dishonest, unfair, or improper.  To the contrary, Drive initiated cancellation proceedings because it believed that it owned the trademark Med Way was using, and Drive did in fact own the trademark.  *See supra* Discussion, Section A. Accordingly, Drive's pursuit to cancel Med Way's trademark registration, Drive's initiation of this suit, and Drive's use of the mark, were not "solely malicious, dishonest, unfair, or improper." *Carvel Corp.*, 350 F.3d at 17.

Therefore, Drive's motion for summary judgment dismissing Med Way's Med Way's Eleventh Counterclaim for tortious interference is granted, and Med Way's Eleventh Counterclaim is dismissed.

### 7.   Med Way's Assertion that Drive Abandoned its Use of "Med-Aire" Prior to Med Way's Use of "MEDAIR®"

Med Way argues that, even if Drive used "Med-Aire" as a mark, as far back as 2007, Drive abandoned the mark for non-use under 15 U.S.C. § 1127.  Med Way's Mem. at 24.

"The abandonment doctrine derives from the well-established principle that trademark rights are acquired and maintained through use of a particular mark." *ITC Ltd.*, 482 F.3d at 146. "A trademark must be used or lost to another economic actor more willing to promote the mark in commerce." *Stetson v. Howard D. Wolf & Assocs.*, 955 F.2d 847, 851 (2d Cir. 1992).  Therefore, a party seeking to establish abandonment under 15 U.S.C. § 1127 must establish both "'(i) non-use of the mark by the legal owner', and '(ii) no intent by that person or entity to resume use in the

reasonably foreseeable future.'" *Rosenshine v. A. Meshi Cosmetics Indus. Ltd.*, 18-CV-3572 (LDH), 2023 WL 6516994, at *4 (E.D.N.Y. Oct. 4, 2023) (quoting *Pado, Inc. v. SG Trademark Holding Co.*, 527 F. Supp 3d 332, 341 (E.D.N.Y. 2021)). Med Way, as the "party asserting an abandonment defense[,] bears the burden of persuasion." *Pado, Inc.*, 527 F. Supp. 3d at 341 (quotations omitted).

First, non-use of a mark for three consecutive years can constitute "prima facie evidence of abandonment." 15 U.S.C. § 1127. "Use" here is the same as "use in commerce" for trademark purposes.

This Court has concluded that Drive's use of the "Med-Aire" mark established trademark protections, and the use of the mark was continuous from 2007 to 2020. *See supra* Discussion, Section A. Drive has provided overwhelming evidence that it affixed the "Med-Aire" mark to its products and made them available for sale. *See, e.g.*, Declaration of Tony Crisitello in support of Plaintiff's Motion for Summary Judgment - Ex. 4, External Packaging Specs, ECF 71-7; *Id.* at Ex. 5, Shipping Label Photos, ECF 71-8; *Id.* at Ex. 7, User Manual Excerpts, ECF 71-10; *Id.* at Ex. 9, Proof and Photos of Pump Face Plate, ECF 71-9; *Id.* at Ex. 10, Catalogs, ECF 71-13; *Id.* at Ex. 13, Amazon Listings, ECF 71-16; *see also* Pl.'s Counter 56.1 ¶¶ 24, 26. Beyond Med Way's previously addressed arguments for why "Med-Aire" was not used as a trademark, Med Way provides no other evidence to establish that Drive abandoned its trademark. *See generally* Med Way's Mem. at 24-25. Therefore, Med Way's abandonment claim is dismissed.

### E. Drive's Relief

#### 1. Damages

Drive argues that the "principles of equity" entitle it to recover Med Way's profits from its infringing conduct. Drive's Reply at 9 (citing 15 U.S.C. § 1117(a)).

Disgorgement of profits is a form of relief that "is rarely granted and [is] limited to situations in which the defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff." *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984). The Second Circuit allows for the recovery of profits "(1) to avoid unjust enrichment; (2) as a proxy for plaintiff's actual damages; and (3) to deter infringement." *See 4 Pillar Dynasty LLC v. N.Y. & Co.*, 933 F.3d 202, 212 (2d Cir. 2019).

When determining whether to award profits, courts balance the following equitable factors: "(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by plaintiff; and (5) plaintiff's clean (or unclean) hands." *Id.* Further, the Supreme Court has clarified that "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 219 (2020). The choice of remedy under the Lanham Act is within the district court's discretion. *See 4 Pillar Dynasty LLC*, 933 F.3d at 214.

Additionally, to obtain profit disgorgement under the Lanham Act, a plaintiff is "required to prove [the] defendant's sales" and the defendant "must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). If the court concludes that the amount of profit to be recovered is "either inadequate or excessive[,] the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case . . . The court in exceptional cases may [also] award reasonable attorney fees to the prevailing party." *Id.*

As an initial matter, Drive argues that the Court can infer that "Med Way has benefited from its unlawful conduct, having capitalized on almost two-decades' worth" of Drive's goodwill and "Med-Aire" sales, to "reap[] well over $1 million in sales." Drive's Mem. at 21.

33

In support of its argument, Drive cites two cases: *Diesel S.p.A. v. Diesel Power Gear, LLC*, 19-CV-09308 (JLR), 2023 WL 5718000, at \*3 (S.D.N.Y. Sept. 5, 2023) and *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 465-67 (S.D.N.Y. 2017).  As Drive suggests, the court in *Coty* found that there was "no doubt" the defendant benefited from its unlawful conduct.  There, unlike here, the *Coty* court had ample evidence about the extreme difference in quality of the products, *Coty Inc*, 277 F. Supp 3d at 455-56, the record was "replete with evidence of bad faith," *id.* at 454, and the infringer "meticulously mimicked" the fragrances and packaging in a way that "could only have been calculated to capitalize on [the trademark owner's] goodwill."  *Id.*  No such finding has been made here.  It is unclear to this Court how *Diesel S.p.A.*, 2023 WL 5718000 at \*3, supports Plaintiff's proposition.  Nonetheless, Drive has not established that Med Way benefited from infringing on Drive's trademark.  Therefore, this factor weighs against profit disgorgement.

The parties have not explicitly briefed the availability and adequacy of other remedies factor, apart from Drive's remarks that "no other monetary remedy would 'reasonably compensate' Drive for Med Way's trademark infringement," Drive's Mem. at 22, and that "Med Way [does not] dispute that no other monetary remedy would 'reasonably compensate' Drive."  Drive's Reply at 9.

As to the third factor, the role of the defendant in effectuating infringement, Drive asserts that it is undisputed that "Med Way's infringement was willful."  Drive's Mem. at 22.  Drive points to the deposition testimony of Med Way CEO, Dr. Alawad, who explained that he ran searches that revealed Drive's "Med-Aire" products and physically examined them to develop his own.  Deposition Testimony at 78:6-17, 82:3-11.  As discussed above, Dr. Alawad testified that he searched "MEDAIR®" and phrases like "alternating air mattress" and "low pressure air mattress," and that he does not remember the mark—"Med-Aire"—ever appearing with a mattress.  *Id.* at

34

82:12-83:17. Dr. Alawad conceded that when he searched for "alternating air mattress" on Google the first ten or so mattresses that popped up were Drive mattresses. *Id.* at 80:2-5. Dr. Alawad admits clicking on the images of the Drive mattresses—explaining that because of how he searched he came across Google images only, not full product listings from sites like Amazon.com. *Id.* at 80:2-14. Dr. Alawad's testimony only supports the contention that he was aware that Drive made medical air mattresses—not that those products were branded "Med-Aire."

In further support of its willful infringement argument, Drive contends that Dr. Alawad's claim that he physically examined Drive mattresses to see what a competitor's mattresses looked like, but did not see the phrase "Med-Aire" on the mattresses or anywhere else, Declaration of Ahmed Alawad, ECF 73-13 ¶ 11, is "facially incredible." Drive's Mem. at 22. The Court disagrees. Based on Drive's own exhibits, *see generally* Ex. 15 to Declaration of Tony Crisitello in Support of Drive's Motion for Summary Judgment, ECF 71-18, a person could reasonably examine the physical mattress alone—without the point of sale listing, or the user manual, or an advertising flyer—and not encounter the "Med-Aire" mark.

Furthermore, Drive argues that even after it alerted Med Way to Med Way's infringing conduct, Med Way continued to use Drive's mark. According to Drive, this continued use "indicates willfulness and supports an award of Med Way's profits." Drive's Mem. at 22. To the contrary, Med Way's CEO and Med Way's attorneys have expressed a genuine belief that although Drive used "Med-Aire," it was not the senior user of the mark. Thus, while Med Way's continued use of the mark could support a finding of willful infringement, it could just as likely support a finding of unintentional infringement, driven by a (mistaken) belief that they had priority in the mark. Thus, Drive's evidence in support of its willful infringement argument is too speculative to weigh in favor of profit disgorgement.

Finally, pursuant to the fourth and fifth factors, Drive argues, and Med Way does not dispute, that Med Way cannot prove that Drive delayed in protecting its rights or has unclean hands. *Id.*; *see also Diesel S.p.A.*, 2023 WL 5718000, at *4; *see generally*, Med Way's Response in Opp. This factor weighs in favor of profit disgorgement.

Ultimately, the Court finds that the balance of the equitable factors weighs against profit disgorgement and in favor of Med Way. Therefore, Drive's damages claim is dismissed.

### 2. Permanent Injunction

Drive seeks to permanently enjoin Med Way from future trademark infringement. Section 34(a) of the Lanham Act gives courts "power to grant injunctions according to the principles of equity and upon such terms as the [C]ourt may deem reasonable" to prevent any future trademark infringement by a defendant. 15 U.S.C. § 1116. To obtain a permanent injunction, a plaintiff must demonstrate (1) actual success on the merits and (2) irreparable harm. *Phillip Morris USA Inc. v. Marlboro Express*, CV-03-1161 (CPS), 2005 WL 2076921, at *5 (E.D.N.Y. Aug. 26, 2005) (citing first *Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003); and then *Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 148, n.13 (S.D.N.Y. 1990)).

Drive has established success on the merits for its trademark infringement claim. *See supra* Discussion, Section A. Moreover, in the Second Circuit "proof of a likelihood of confusion [which the parties have conceded] establishes . . . irreparable harm." *Brennan's Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 29 (2d Cir. 2004); *Genesee Brewing*, 124 F.3d at 142. Accordingly, Drive is entitled to a permanent injunction enjoining Med Way from further infringement of Drive's mark. *See, e.g.*, *Phillip Morris*, 2005 WL 2076921, at *7; *Gucci America, Inc.*, 286 F. Supp. 2d at 290. Med Way is enjoined from selling and marketing any product bearing the "MEDAIR®" trademark or any variation thereof.

**F.  Med Way's Motion for Partial Summary Judgment**

Med Way seeks a judicial determination that Drive has no trademark rights in "Med-Aire" and therefore that Drive's claims for (1) federal trademark infringement, (2) unfair competition, and (3) cancellation of Med Way's trademark registration, fail as a matter of law.  Med Way's Mem. at 1.  However, Drive established its federal trademark infringement claim and its claim for cancellation of Med Way's trademark.  *See supra* Discussion, Section A.  Therefore, Med Way's motion as to those claims is denied.  Further, the Court granted Med Way's motion for summary judgment on Drive's unfair competition claim.  *See supra* Discussion, Section B.

**CONCLUSION**

For the foregoing reasons, the Court orders the following:

(1) Drive's motion for summary judgment is granted as to its federal trademark infringement claim and cancellation of Registration No. 6,116,976 and denied as to its unfair competition claim;

(2) Drive's motion for summary judgment is also granted as to each of Med Way's counterclaims; thus, Med Way's counterclaims are dismissed;

(3) Drive's request for a permanent injunction is granted;

(4) Drive's request for damages is denied; and

(5) Med Way's motion for partial summary judgment is granted as to Drive's unfair competition claim and dismissed as to Drive's federal trademark infringement and cancellation claims.

The Clerk of Court is respectfully directed to enter judgment in accordance with this memorandum and order and to close this case.

SO ORDERED.

Dated: March 28, 2025
       Brooklyn, New York

                                                    /s/_____
                                                    ORELIA E. MERCHANT
                                                    United States District Judge